***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral arguments of the parties with reference to the errors assigned by defendants. Defendants have not shown good grounds to reconsider the evidence, to receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in the Pre-Trial Agreement as: *Page 2 
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and the defendant-employer Love Plumbing Air Conditioning, with Stonewood Insurance the carrier on the risk on the date of injury of 5 July 2006.
5. Plaintiff's average weekly wage is $524.30.
6. Plaintiff suffered a compensable injury by accident to his right lower extremity on 5 July 2006.
7. Plaintiff was declared at maximum medical improvement on 31 January 2007. Defendant-employer could not accommodate plaintiff's permanent restrictions. Plaintiff has been engaged in vocational rehabilitation since 17 April 2007.
 ***********
The following were received into evidence as:
 STIPULATED EXHIBITS a. The Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. Various documents related to this case, collectively paginated 1-601 and marked as stipulated exhibit 2.
 ***********
The following were received into evidence during the hearing as: *Page 3 
 EXHIBITS a. A written surveillance report marked as defendants' exhibit 1.
 b. A written surveillance report marked as defendants' exhibit 2.
 c. A VCR tape containing surveillance video taken 17 through 19 June 2008, marked as defendants' exhibit 3.
 d. A VCR tape containing surveillance video taken 28 through 30 June 2008, marked as defendants' exhibit 4.
 e. A DVD disc containing surveillance video taken 1 May 2008, 21 May 2008, 23 May 2008, and 24 May 2008, marked as defendants' exhibit 5.
 *********** ISSUE PRESENTED
Is plaintiff totally and permanently disabled pursuant to N.C. Gen. Stat. § 97-29 and the case law?
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 61 years old. Plaintiff lives in Ruby, South Carolina, which is located approximately 60 miles south of Concord, North Carolina.
2. Plaintiff's education ended when he dropped out of elementary school or junior high school. Based on testing done in late 2007, plaintiff could not read at all.
3. Prior to beginning work with defendant-employer in 1998, plaintiff's jobs were: *Page 4 
tree lineman, owner and operator of a gas station and grill, landscaper, phone company lineman, electrician, heavy equipment operator, and mechanical assistant. Plaintiff's entire work history prior to 1998 involved jobs that required him to stand for a majority of his day and, with the exception of the grill owner and operator position, required medium to heavy-duty work.
4. Plaintiff began working for defendant-employer in 1998 as a plumber's helper. Plaintiff's job with defendant-employer required him to complete heavy tasks such as digging ditches, laying large PVC pipe, and installing septic tanks. Plaintiff's job for defendant-employer regularly involved heavy lifting, climbing ladders, working on uneven surfaces, working around unprotected heights, as well as walking, standing, and squatting.
5. While working for defendant-employer as a plumber's helper on 5 July 2006, plaintiff was on a ladder that shifted, causing him to fall and suffer a compensable injury to his right ankle/foot. Defendants accepted plaintiff's claim with a Form 60 that was dated 6 July 2006.
6. Plaintiff was initially seen at Monroe Urgent Care. He was x-rayed, diagnosed with a "[f]ractured right ankle," and immediately referred to Carolina Bone and Joint, where Dr. Seth L. Jaffe saw him on 5 July 2006. Dr. Jaffe diagnosed plaintiff with a "[t]alar dome fracture, right" and a "[d]istal fibular fracture, nondisplaced." Dr. Jaffe removed plaintiff from work, ordered a CT Scan, and began plaintiff on pain medication.
7. Plaintiff was eventually treated by Dr. Bruce Cohen with Ortho Carolina. Plaintiff underwent an "open reduction internal fixation, right talus" and "right medial malleolar osteotomy" surgery performed by Dr. Cohen on 24 July 2006.
8. Plaintiff was re-evaluated by Dr. Cohen on 27 September 2006. The medical note generated by this visit documents plaintiff to be "having significant pain" and "still using crutches." *Page 5 
On this date Dr. Cohen ordered aggressive physical therapy and recommended continued use of anti-inflammatories. Dr. Cohen's note also states, "[Plaintiff] is still off of work."
9. Plaintiff continued his treatment with Dr. Cohen, and on 6 December 2006 Dr. Cohen saw plaintiff and noted that plaintiff was "still struggling somewhat." At that time, Dr. Cohen recommended that plaintiff try a TENS unit and an ASO brace.
10. Plaintiff continued treatment under Dr. Cohen, and he recommended that plaintiff undergo a Functional Capacity Evaluation (hereinafter FCE).
11. Plaintiff underwent the FCE on 25 January 2007 at Carolinas Rehabilitation in Monroe, North Carolina. Regarding plaintiff's physical ability to work, the FCE report concluded, "Based on this evaluation, [plaintiff] is incapable of sustaining the light level of work for an 8-hour day/40-hour week. However, [plaintiff] task scores indicate [plaintiff] has the standing and walking ability sufficient for light work. If allowed to work at the sedentary level [plaintiff] can tolerate the 8-hour day." The FCE also documented that plaintiff "participated fully in all tasks. No self-limiting behavior noted."
12. Upon review of the FCE report, Dr. Cohen placed plaintiff at maximum medical improvement on 31 January 2007 with a permanent partial impairment rating of 20% to the right foot and permanent restrictions of "light duty with 25 pound lifting, pushing and carrying restriction on a frequent basis and 50 pound occasional. No climbing. He is to avoid uneven surfaces. No unprotected heights. He needs to be able to sit 30 minutes per hour." All of plaintiff's employment prior to 5 July 2006 required physical abilities beyond these restrictions.
13. Defendant-employer commenced vocational rehabilitation services in plaintiff's case on 17 April 2007 using Rehabilitation Consultant Anthony Enoch of Wright Rehabilitation *Page 6 
Services. In his initial report, Mr. Enoch noted several factors influencing plaintiff's ability to return to work including, "Lack of GED," the "Unemployment rate of Ruby, South Carolina," and plaintiff's inability to read and write.
14. Plaintiff was evaluated by Ms. Joni Liebel on 3 July 2007. Ms. Liebel is a vocational case manager and was asked to evaluate plaintiff's vocational status. In her report, Ms. Liebel noted that, given plaintiff's education level, "it could take several years for [plaintiff] to complete his GED." In her report, Ms. Liebel concluded, "It is my opinion that any further vocational rehabilitation efforts are futile."
15. Due to ongoing pain, plaintiff returned to Dr. Cohen on 8 August 2007. Dr. Cohen noted that plaintiff continued to use a prescribed medical boot and that plaintiff had fallen a few times as well. Dr. Cohen concluded the note with, "No change in his work status or his impairment rating. He is discharged once again."
16. Plaintiff enrolled in the GED program at the Lancaster County (South Carolina) Adult Education Center in December of 2007. As is standard practice for all students entering the GED program, plaintiff was required to take a "locator" test to determine his current abilities in areas such as reading and math. Plaintiff took his locator test on 18 December 2007. Plaintiff's test results were a "zero" which indicated that he could not read at all. Plaintiff was placed in a pre-GED program.
17. Mr. Randall Hunter is plaintiff's instructor. Mr. Hunter has been an instructor with the Adult Education Program in Lancaster County for approximately six years.
18. Mr. Hunter testified by deposition subsequent to the hearing that plaintiff now reads at a second-grade level and that it would take a minimum of ten years for plaintiff to achieve *Page 7 
a GED. Mr. Hunter testified that plaintiff attends the program two times per week and that plaintiff "always [has] been faithful about being there."
19. When asked specifically whether he thought plaintiff could complete the GED program, Mr. Hunter testified, "Doubtful. I just don't think that he can retain the knowledge. I just don't think it's possible."
20. By letter dated 15 January 2009, Dr. Cohen responded to questions propounded by defense counsel. These responses mainly dealt with the surveillance of plaintiff undertaken by defendants. Dr. Cohen concluded the letter by addressing the surveillance thusly, "I found no evidence in this poorly shot surveillance video to change any recommendations that I have made based on my years of experience as a Foot and Ankle Specialist and Orthopaedic Surgeon, as well as my long period of time in treating [plaintiff.]"
21. The surveillance reports and videos entered into evidence do not depict plaintiff engaged in any activity materially inconsistent with plaintiff's testimony or the information plaintiff provided to his doctors.
22. Prior to 5 July 2006, plaintiff had earned some money by raising hogs in his spare time. Subsequent to the injury plaintiff sold all of his hogs. Plaintiff's activity in raising and selling the hogs subsequent to 5 July 2006 was sporadic in nature and plaintiff was able to work with the hogs as his physical condition allowed. Plaintiff's activity with the hogs subsequent to the compensable injury is not indicative of his ability to attain and sustain competitive employment. Furthermore, this work is not indicative of wage earning capacity and does not constitute suitable employment.
23. As a result of injuries sustained by plaintiff in the admittedly compensable injury of 5 July 2006 and plaintiff's resulting physical limitations, taken with plaintiff's age, education, and *Page 8 
work history, plaintiff is unable to perform any type of work and is unable to earn wages in any employment and further vocational rehabilitation and job search efforts would be futile.
24. Plaintiff's average weekly wage of $524.30 results in a weekly workers' compensation rate of $349.55.
 ***********
The foregoing findings of fact and conclusions of law engender the following:
 CONCLUSIONS OF LAW
1. In a workers' compensation claim for permanent and total disability, the plaintiff has the burden of proving the existence and extent of disability. Hunt v. North Carolina StateUniversity, 159 N.C. App. 111, 582 S.E.2d 380 (2003) citingSaunders v. Edenton Ob/Gyn Ctr., 352 N.C. 136,530 S.E.2d 62 (2000); Russell v. Lowes Product Distribution,425 S.E.2d 454, 457 (N.C. App. 1993). An employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Hunt v. North Carolina State University,159 N.C. App. 111, 114, 582 S.E.2d 380, 382 (2003). "Once an employee meets [his] initial burden of production, the burden of production shifts to the employer to show `that suitable jobs are available' and that the employee is capable of obtaining a suitable job `taking into account both physical and vocational limitations.'"Demery v. Perdue Farms, Inc., 545 S.E.2d 485,490 (N.C. App. 2001) *Page 9 quoting Kennedy v. Duke Univ. Med. Center, 101 N.C. App. 24,33, 398 S.E.2d 677, 682 (1990).
2. Regarding plaintiff's sporadic activities raising and selling hogs subsequent to his injury, it is possible for defendants to rebut the presumption of plaintiff's continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employee's physical and vocational limitations." Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200, 206,472 S.E.2d 382, 386, cert. denied, 344 N.C. 629,477 S.E.2d 39 (1996). However, "mere proof of a return to work is insufficient to rebut the . . . presumption," because "capacity to earn is the benchmark test of disability." Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996),disc. review denied, 345 N.C. 343, 483 S.E.2d 169 (1997). Given the foregoing, and the facts of this case, plaintiff's activities with the hogs subsequent to 5 July 2006 did not constitute suitable employment sufficient to establish his capacity to earn competitive wages.
3. In the present case, the evidence of record shows that plaintiff is incapable of work in any employment because of the physical limitations he suffers as a result of the admittedly compensable injury of 5 July 2006, taken with his age, work history, lack of transferable skills, and very limited education. Moreover, it would be futile for plaintiff to search for employment given these physical limitations, in combination with his advanced age, work history of heavy work requiring standing most of the day, lack of transferable skills, and limited education consisting of zero ability to read and write at the time of injury but has now improved to second grade level. Plaintiff's prospects for improving his employability through obtaining a GED are minimal. Defendants have provided insufficient evidence that work is available to plaintiff or that plaintiff is capable of obtaining work given his physical, educational, and vocational limitations. *Page 10 
Plaintiff is totally and permanently disabled pursuant to N.C. Gen. Stat. § 97-29. Whitley v. Columbia Lumber Mfg. Co.,318 N.C. 89, 348 S.E.2d 336 (1986); Hunt v. North Carolina StateUniversity, 159 N.C. App. 111, 114, 582 S.E.2d 380, 382 (2003).
4. Because plaintiff is found to be totally and permanently disabled, plaintiff is entitled to receive total and permanent disability compensation at the rate of $349.55 per week beginning 6 July 2006 and continuing. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants pay for all medical treatment incurred or to be incurred by plaintiff as a result of his admittedly compensable injury of 5 July 2006. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for the temporary total disability benefits already paid plaintiff in this case. N.C. Gen. Stat. § 97-42.
7. Plaintiff's average weekly wage of $524.30 results in a weekly workers' compensation rate of $349.55. N.C. Gen. Stat. § 97-2(5).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a credit for the temporary total disability benefits already paid plaintiff and the attorney's fee approved below, defendants shall pay to plaintiff total and permanent disability compensation at the rate of $349.55 per week from 6 July 2006 and continuing.
2. Defendants shall provide all reasonably required medical treatment incurred or to be incurred as a result of plaintiff's compensable injury. *Page 11 
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel to be paid as follows: Twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
S/___________________ LAURA K. MAVRETIC COMMISSIONER *Page 1